IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
**BILLINGS DIVISION**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, )<br><br>)<br>)<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>)<br>ANDREAS ENTERPRISES LLC, )<br> d/b/a ANDREAS PETROLEUM )<br>and LEE ANDREAS, )<br>)<br>Defendants. )<br>) | Case No. CV-26-12-BLG-SPW<br><br><br>STIPULATION and<br>AGREED JUDGMENT |

**STIPULATION AND AGREED JUDGMENT**

WHEREAS Plaintiff United States of America ("United States"), by

authority of the Attorney General of the United States and acting at the request of

the United States Coast Guard ("USCG"), the United States Department of the

Interior ("DOI") and the National Park Service ("NPS"), filed a Complaint under

the System Unit Resources Protection Act ("SURPA"), 54 U.S.C. §§ 100721-

100725, and Section 1002 of the Oil Pollution Act ("OPA"), 33 U.S.C. § 2702

1

against Defendants Andreas Petroleum and Lee Andreas (collectively "Andreas" or "Defendants");

WHEREAS the United States sought in its Complaint recovery of all damages available to it, including response costs and damages to System unit resources as defined under SURPA, and removal costs and natural resource damages as defined under OPA, within Yellowstone National Park ("Yellowstone") alleged to have resulted from an incident involving an Andreas Petroleum tractor trailer, driven by Mr. Lee Andreas, that was hauling gasoline through the Park's Hayden Valley. Mr. Andreas lost control of the vehicle's "pup" trailer which overturned and spilled approximately 3,200 gallons of unleaded gasoline on and alongside the roadway that follows the Yellowstone River;

WHEREAS the United States alleges that the incident caused NPS loss of visitor use to the impacted area; that NPS and the Environmental Protection Agency ("EPA") incurred removal costs responding to and cleaning up the area; and the public lost use and enjoyment of Yellowstone. The United States believes that the settlement embodied in this Stipulation represents a reasonable compromise and is consistent with the goals of SURPA and OPA;

WHEREAS the United States also sought in its Complaint recovery of damages available to the United States arising under its natural resource trusteeship

2

for alleged damage to natural resources, belonging to, managed by, controlled by or appertaining to the United States;

WHEREAS Defendants neither admit nor deny the alleged violations of law stated in the Complaint or the NOV;

WHEREAS the Parties have agreed that settlement of this matter is in the public interest and that entry of this Order without further litigation constitutes the most appropriate means of resolving this matter;

WHEREAS the United States has reviewed the financial information provided by Andreas, including income, net worth, tax returns, statements of cash flows, assets and liabilities, W-2s, and living expenses, and has determined that Defendants possess limited financial ability to pay for damages to natural resources, response costs, and removal costs incurred and to be incurred from the Andreas Petroleum Spill beyond the amounts specified in this Stipulation; and

NOW THEREFORE, before the taking of any testimony, without adjudication or admission of any issue of fact or law, and upon consent and agreement of the Parties to this Stipulation, it is hereby AGREED, STIPULATED, and ORDERED:

## I.   JURISDICTION AND VENUE

1.   This Court possesses jurisdiction over the subject matter of this action under 54 U.S.C. § 100723 (SURPA), 33 U.S.C. § 2717(b) (OPA), 28 U.S.C. §§ 1331 (federal question), and 1345 (United States as a Plaintiff).  For purposes of this Stipulation, or any action to enforce this Stipulation, the Parties consent to the Court's jurisdiction over this Stipulation and any such action and over the Parties, and consent to venue in this judicial district.

## II.   PARTIES BOUND

2.   The obligations of this Stipulation apply to and are binding upon the United States and upon the Defendants and their successors.  Any change in Defendants' ownership or corporate status shall not alter its obligations hereunder. All of Defendants' obligations to perform acts or pay money pursuant to this Stipulation and Agreed Judgment are set out in Sections IV, V and X below.

## III.   DEFINITIONS

3.   Unless otherwise provided in this Stipulation, terms used in this Stipulation that are defined in SURPA and OPA or in the regulations promulgated under OPA shall have the meaning assigned to them in SURPA and OPA or in such regulations.  Whenever terms listed below are used in this Stipulation or its appendices, the following definitions shall apply solely for the purposes of this Stipulation:

A.     "Affected Area" shall mean the spill site is located approximately 4 miles north/northwest of Yellowstone Lake on the Grand Loop Road near the Cascade Picnic Area.

B.     "Andreas Petroleum Spill" shall mean the August 27, 2020, incident involving the overturned Andreas Petroleum tractor trailer and resulting spill of approximately 3,200 gallons of unleaded gasoline.

C.     "Complaint" shall mean the complaint filed by the United States in this civil action.

D.     "Day" or "day" shall mean a calendar day.  In computing any period of time under this Stipulation, where the last day would fall on a Saturday, Sunday, or federal holiday, the period shall run until the close of business of the next working day.

E.     "DOI" shall mean the United States Department of the Interior and its successor departments, agencies, or instrumentalities.

F.     "DOJ" shall mean the United States Department of Justice and its successor departments, agencies, or instrumentalities.

G.     "Effective Date" shall mean the date upon which the approval of this Stipulation is signed by the Court and recorded on the Court's docket.

4.     "Government-Approved Remedy Plan" shall mean the United States, and Wyoming-approved detailed design plan, including but not limited to, the

installation, removal and monitoring of permeable reactive barriers and other actions in response to the Andreas Petroleum Spill. A copy of the Government-Approved Remedy Plan is attached as Appendix A to this Stipulation.

H.    "Kuntz Environmental Services" or "Kuntz" shall mean the contractor responsible for work to be performed under the Government-Approved Remedy Plan.

I.    "NPS" shall mean the United States National Park Service and its successor departments, agencies, or instrumentalities.

J.    "Paragraph" shall mean a portion of this Stipulation identified by an Arabic numeral or an upper or lower case letter.

K.    "Parties" shall mean the United States and Defendants.

L.    "Section" shall mean a portion of this Stipulation identified by a Roman numeral.

M.    "Stipulation" shall mean this Stipulation and Agreed Judgment.

N.    "System unit resource" shall mean any living or non-living resources located within the boundaries of a System unit as defined by SURPA. 54 U.S.C. § 100722(a).

O.    "United States" shall mean the United States of America, including the USCG, DOI and NPS.

P.     "Wyoming" shall mean the State of Wyoming, including the Wyoming Department of Environmental Quality.

## IV.   PAYMENT AND DISBURSEMENT OF FUNDS

5.     Under this Stipulation, Defendants shall pay the sum of $3,500,000.00 for response costs and damages related to the Andreas Petroleum Spill.  The funds shall be distributed as follows:

a.     <u>Payment for United States' Past Response Costs and Damages</u>: Not later than 45 Days after the Effective Date, Defendants shall pay $745,113.00 to the United States.  Of this amount, the United States will disburse $545,113.00 to the USCG, National Pollution Funds Center for removal costs associated with EPA's response action and $200,000.00 to the NPS for its past response costs pertaining to the Andreas Petroleum Spill.  Payment shall be in the form of an Electronic Funds Transfer to the DOJ account, in accordance with instructions provided to Defendants on or before the Effective Date by the Financial Litigation Unit ("FLU") of the United States Attorney's Office for the District of Montana. The payment instructions provided by the FLU will include a Consolidated Debt Collection System number, which Defendants shall, along with the DOJ Case Number 90-5-1-1-12621, use to identify all payments required to be made in accordance with this Stipulation.  The FLU will provide the payment instructions to Western Justice Associates, PLLC to the attention of Jory Ruggiero at

jory@westernjusticelaw.com on behalf of Defendants.  Defendants may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States in accordance with Section IX (Notice).

       b.    <u>Payment for Implementation of the Government-Approved Remedy Plan</u>:  Defendants shall pay the sum of $2,754,887.00 for implementation of the Government-Approved Remedy Plan for cleanup of the Affected Area.  The total amount described under this Paragraph shall be disbursed exclusively for implementation of the Government-Approved Remedy Plan in accordance with the requirements under Section V (Defendants' Clean up and Restoration Obligations).

      6.    Defendants to date have expended $1,119,246.75 of the sum described in Paragraph 5.b for implementation of the Government-Approved Remedy Plan.

      7.    Not later than 45 days after the Effective Date, the unpaid balance of the sum under Paragraph 5.b. totaling $1,635,640.25 shall be deposited in an interest-bearing trust account that is mutually agreed-upon by the Parties ("Remedy Plan Trust Account").  The account shall be administered by a trustee, appointed by Defendants, who is an attorney licensed to practice law in Montana or a bank or trust company authorized to do business in Montana under the laws of Montana or the United States.  The funds shall be managed by Defendants and all such funds, plus accrued interest, shall be applied toward the cost of implementing the Government-Approved Remedy Plan and this Stipulation, including any

reasonable expenses of the trustee incurred in communicating with the United States and Wyoming, addressing disputes and overseeing distribution of the funds in order to implement the Government-Approved Remedy Plan, until fully expended or swept by NPS in accordance with Paragraph 14.

## V.    DEFENDANTS' CLEAN UP AND RESTORATION OBLIGATIONS

8.    Defendants have contracted with Kuntz Environmental Services to implement the Government-Approved Remedy Plan.  A copy of the contract between Defendants and Kuntz ("Kuntz Contract") is attached as Appendix B to this Stipulation.  The Parties agree that the Government-Approved Remedy Plan will be implemented according to the Kuntz Contract.  The Kuntz Contract may be amended only by written agreement of the NPS, Wyoming, Defendants, and Kuntz.

9.    Defendants' cleanup and restoration obligation shall be to pay Kuntz's bills pursuant to the Invoice and Payments provisions in Section 11 of the Kuntz Contract, unless otherwise mutually agreed by NPS, Wyoming, Defendants and Kuntz in writing.  On or about the first of each month, the trustee will send NPS, in accordance with Section IX (Notice), any bills received from Kuntz in the preceding 30 days and any expenses of the trustee billed in the preceding 30 days.

10.    Defendants shall have no obligation under this Stipulation, including to fund the Government-Approved Remedy Plan or pay Kuntz, after the amount set forth in Paragraph 5.b., plus any accrued interest, is expended or transferred to

NPS, pursuant to Paragraph 14.   The United States and Wyoming shall have no financial obligations regarding the implementation of the Government-Approved Remedy Plan.

11.    Before conducting work under the Government-Approved Remedy Plan, Kuntz must apply for and receive a Special Use Permit ("SUP") from NPS. At all times, Kuntz must maintain a current and approved SUP to implement the Government-Approved Remedy Plan and comply with the SUP.

12.    At the conclusion of implementation of the Government-Approved Remedy Plan, including any required period of monitored natural attenuation, any funds described in Paragraph 5.b. that are dedicated to the Government-Approved Remedy Plan that have not been paid out pursuant to Paragraph 7, shall be deposited in the DOI Natural Resource Damage Assessment and Restoration Fund. Such funds shall be used to fund additional natural resource restoration, compensate for lost use, and reimburse any costs related to oversight and administration of restoration planning and implementation.

13.    No later than 30 Days after the Government-Approved Remedy Plan has been completed, the funds described in Paragraph 5.b. are exhausted, or the Remedy Plan Trust Account is swept by NPS in accordance with Paragraph 15, Defendants shall send written notice to NPS in accordance with Section IX (Notice) that the restoration obligations set out in Section V are completed in full

compliance with the requirements of this Stipulation.  The notice of completion shall include the Certification set forth in Section X (Certification).

14.    No later than 60 Days after the date of NPS's receipt of Defendants' notice of completion under Paragraph 13, NPS shall evaluate the notice of completion, and if NPS, after consultation with Wyoming, agree that Defendants have met its obligations under this Stipulation, the United States will issue a certification of completion of Defendants' obligations under this Stipulation and the United States will file notice of satisfaction of judgment.

15.    NPS, after mutual agreement with Wyoming, reserves the right to object to any aspect of Kuntz's implementation of the Government-Approved Remedy Plan.  If NPS determines, after mutual agreement with Wyoming, that Kuntz is not implementing the cleanup as provided in the Government-Approved Remedy Plan or that Defendants' trustee or Kuntz is not performing in a cost-effective or timely manner, NPS, after mutual agreement with Wyoming, may direct Defendants to pay any outstanding bills and expenses from the amount designated in Paragraph 5.b and transfer the balance of the trust account to the DOI Natural Resource Damage Assessment and Restoration Fund. Before directing Defendants to transfer any balance of the trust account, the Parties will meet to discuss any objections to Kuntz's implementation of the Government-Approved Remedy Plan or performance of the Defendants' trustee and attempt to remedy

11

identified concerns in an effort to ensure that the Government-Approved Remedy Plan is completed in a cost-effective and timely manner.

16.    Funds transferred to the DOI Natural Resource Damage Assessment and Restoration Fund pursuant to Paragraph 15 shall be used in accordance with 54 U.S.C. § 100724.

17.    If Defendants disagree with any mutual agreement reached between NPS and Wyoming directing Defendants to transfer the balance of the trust account to the DOI Natural Resource Damage Assessment and Restoration Fund under Paragraph 15, Defendants may elect to invoke the dispute resolution procedures set forth in Section VII (Dispute Resolution).

## VI.    FORCE MAJEURE

18.    "Force majeure," for purposes of this Stipulation, is defined as any event arising from causes beyond the control of Defendants, of any entity controlled by Defendants, or of Defendants' contractors that delays or prevents the performance of any obligation under this Stipulation despite Defendants' best efforts to fulfill the obligation.  The requirement that Defendants exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event.

12

19.    If any event occurs or has occurred that may delay the performance of any obligation under this Stipulation, whether or not caused by a force majeure event, Defendants shall provide notice by telephone or email to NPS within 72 hours of when Defendants first knew that the event might cause a delay.  Within seven days thereafter, Defendants shall provide in writing to NPS an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or mitigate the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendants' rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendants shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude Defendants from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure.

20.    If NPS agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Stipulation that are affected by the force majeure event will be extended by NPS for such time as is necessary to complete those obligations.  An extension of the

time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.

21.    If NPS does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, NPS will notify Defendants in writing of its decision.

22.    If Defendants elect to invoke the dispute resolution procedures set forth in Section VII, Defendants shall do so no later than 30 days after receipt of NPS's notice.  In any such proceeding, Defendants shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendants complied with the requirements of Paragraphs 16 and 17.  If Defendants carry this burden, the delay at issue shall be deemed not to be a violation by Defendants of the affected obligation of this Stipulation identified to NPS and the Court.

## VII.  DISPUTE RESOLUTION

23.    Unless otherwise expressly provided for in this Stipulation, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Stipulation.  Any Party's

14

failure to seek resolution of a dispute under this Section shall preclude that Party from raising any such issue as a defense to an action to enforce any obligation arising under this Stipulation.

24.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Stipulation shall first be the subject of informal negotiations. The dispute shall be considered to have arisen when one or more Parties send all other Parties a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendants invoke formal dispute resolution procedures as set forth below.

25.    Formal Dispute Resolution.  Defendants shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by sending DOJ a written Statement of Position regarding the matter in dispute. The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting the position of Defendants and any supporting documentation relied upon by Defendants.

26.    The United States will send Defendants its Statement of Position within 45 days of receipt of the Statement of Position of Defendants. The United States's Statement of Position shall include but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States. The United States's Statement of Position is binding on Defendants, unless Defendants file a motion for judicial review of the dispute in accordance with the following Paragraph.

27.    Judicial Dispute Resolution. Defendants may seek judicial review of the dispute by filing with the Court and serving on the United States a motion requesting judicial resolution of the dispute. The motion (a) must be filed within Thirty (30) Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph; (b) may not raise any issue not raised in formal dispute resolution pursuant to Paragraph 25 unless the United States raises a new issue of law or fact in the Statement of Position; (c) shall contain a written statement of the position of Defendants on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and (d) shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Stipulation.

28.     The United States shall respond to the motion of Defendants within the time period allowed by the Local Rules of this Court.  Defendants may file a reply memorandum, to the extent permitted by the Local Rules.

29.     <u>Standard of Review</u>.  Except as otherwise provided in this Stipulation, in any dispute brought under Paragraph 27, Defendants shall bear the burden of demonstrating that their position complies with this Stipulation.  The United States reserves the right to argue that its position is reviewable only on the administrative record and must be upheld unless arbitrary and capricious or otherwise not in accordance with law.

30.     The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendants under this Stipulation, unless and until final resolution of the dispute so provides.

## VIII.  EFFECT OF SETTLEMENT

31.     This Stipulation and Agreed Judgment resolves the civil claims of the United States for violations alleged in the Complaint filed in this action.

32.     Nothing in this Stipulation shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Stipulation.  Nothing in this Stipulation shall limit, enlarge, or otherwise affect, the private rights or claims of any person not a Party to this Stipulation, except as may be determined

17

otherwise by a court of competent jurisdiction. Each of the Parties expressly reserves any and all rights (including, but no limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Andreas Petroleum Spill against any person not a Party hereto. Nothing in this Stipulation diminishes the right of the United States to pursue any such persons to obtain additional natural resource damages, response costs, removal costs, or response actions.

33.    <u>General Reservations by the United States</u>.  The United States reserves, and this Stipulation is without prejudice to, all rights against Defendants with respect to all matters not expressly included in Paragraph 31. Notwithstanding any other provisions of this Stipulation, this agreement does not constitute resolution of Defendants' potential liability for the following:

a.    Claims based on failure by Defendants to meet a requirement of this Stipulation;

b.    Any potential claims against Defendants for criminal liability associated with the Andreas Petroleum Spill;

c.    Claims against Defendants for natural resource damages that do not arise out of the Andreas Petroleum Spill or related remedial actions.

18

34.     This Stipulation shall not preclude the United States from instituting a separate or ancillary action to enforce the terms of this Stipulation.

35.     <u>Covenants by Defendants</u>.  Defendants hereby covenant not to sue and agree not to assert any claims or causes of action against the United States and their employees, agents, contractors, departments, agencies, administrations and bureaus, related to damages arising from the Andreas Petroleum Spill, including, without limitation, any potential or pending claims against the National Pollution Funds Center relating to the Andreas Petroleum Spill.  This Paragraph does not preclude Defendants from filing a motion for judicial review under Section VI (Dispute Resolution).

## IX.   NOTICE

36.     Unless otherwise specified in this Stipulation, whenever notifications, submissions, or communications are required by this Stipulation, they shall be made in writing and sent by mail or email, with a preference for email, addressed as follows:

| | |
|---|---|
| As to DOJ by email (preferred): | eescdcopy.enrd@usdoj.gov<br>Re: DJ # 90-5-1-1-12621 |
| As to DOJ by mail: | EES Case Management Unit<br>Environment and Natural Resources<br>Division<br>U.S. Department of Justice<br>P.O. Box 7611<br>Washington, D.C. 20044-7611<br>Re: DJ # 90-5-1-1-12621 |

As to DOI:

Clare E. Cragan
Attorney-Advisor
Rocky Mountain Region
Office of the Solicitor
Department of the Interior
Clare.cragan@sol.doi.gov

As to NPS:

Karen Battle Sanborn
Acting Branch Manager
Damage Assessment Case Officer
National Damage Assessment Office
Karen_Battle-Sanborn@nps.gov

Tim Reid
Chief, Yellowstone Center for
Resources
Tim_Reid@NPS.gov

As to USCG:

Dave Dubay
U.S. Coast Guard – National Pollution
Funds Center
2703 Martin Luther King Jr. Ave. SE
(6906-03)
Washington, D.C., 20593-7605
David.M.Dubay2@uscg.mil

As to Defendants and Remedy Plan Trust
Account Trustee (via both email and mail):

Valerie Wyman
Montana Business Law, PLLC
PO Box 11467
Bozeman, MT 59719
valerie@mtbusinessattorney.com

## X.    CERTIFICATION

37.    Each certificate of completion submitted by Defendants pursuant to

this Stipulation shall be signed by an official of Defendants and include the

following certification:

> I certify under penalty of law that this document and all attachments were
> prepared under my direction or supervision in accordance with a system
> designed to assure that qualified personnel properly gather and evaluate the
> information submitted.  Based on my inquiry of the person or persons who
> manage the system, or those persons directly responsible for gathering the
> information, the information submitted is, to the best of my knowledge and
> belief, true, accurate, and complete.  I have no personal knowledge that the
> information submitted is other than true, accurate, and complete.  I am aware
> that there are significant penalties for submitting false information, including
> the possibility of fine and imprisonment for knowing violations.

## XI.    RETENTION OF JURISDICTION; COSTS; HEADINGS; INTEGRATION

38.    This Court shall retain jurisdiction over both the subject matter of this

Stipulation and the Parties for the duration of the performance of this Stipulation

for the purpose of enforcing the terms and conditions of this Stipulation and to

resolve disputes arising hereunder as may be necessary or appropriate for the

construction or execution of this Stipulation.

39.    The Parties shall bear their own costs of this action, including the

costs incurred in enforcing the terms of this Stipulation.

40.    The headings of the Sections shall have no legal significance.

21

41.    This Stipulation constitutes the final, complete, and exclusive understanding among the Parties with respect to the settlement embodied in this Stipulation. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement other than those expressly contained in this Stipulation.

## XII.   SIGNATORIES; SERVICE; SATISFACTION

42.    Each undersigned representative of the United States and of Defendants certifies that they are fully authorized to enter into the terms and conditions of this Stipulation and to execute and legally bind such Party to the document. This Stipulation may be signed in counterparts and its validity may not be challenged on that basis.

43.    Defendants hereby agree that the person identified to receive Notice under Section IX (Notice) is authorized to accept service by mail on behalf of Defendants with respect to service of the Complaint, Stipulation, and any related filings with the Court. Defendants hereby agree to accept service in that manner and to waive the formal service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including but not limited to service of a summons.

## XIII. FINAL JUDGMENT

44.    Upon the Effective Date, this Stipulation shall constitute a final judgment between the United States and Defendants under Fed. R. Civ. P. 54 and 58.

## XIV. APPENDICES

45.    The following Appendices are attached to and are a part of this Stipulation:

> "Appendix A" is the Government-Approved Remedy Plan
>
> "Appendix B" is the Kuntz Contract

Dated and entered this 9th day of February, 2026

*Susan P. Watters*

UNITED STATES DISTRICT JUDGE

23

FOR THE UNITED STATES OF AMERICA:

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice

JEFFREY K. SANDS
Deputy Section Chief
Environment and Natural Resources Division
U.S. Department of Justice

JONAH BROWN
Digitally signed by JONAH
BROWN
Date: 2026.02.05 13:28:47 -07'00'

/S/_____
JONAH P. BROWN
Trial Attorney
Environment and Natural Resources Division
Environmental Enforcement Section
U.S. Department of Justice
Washington, D.C. 20044-7611
Email: Jonah.brown@usdoj.gov

FOR DEFENDANTS:

/S/ *Lee Andreas*
LEE ANDREAS